# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

___

The Hertz Corporation,

    Plaintiff,

v.

Local Union No. 974 A/W International
Brotherhood of Teamsters,

    Defendant.

Civ. No. 09-586 (RHK/SRN)
**MEMORANDUM OPINION
AND ORDER**

___

Charles P. Roberts, III, Constangy, Brooks & Smith, LLP, Winston-Salem, North Carolina, James D. Kremer, Dorsey & Whitney LLP, Minneapolis, Minnesota, for Plaintiff.

James A. Jorgensen, Glendenning & Jorgensen, Ltd., St. Paul, Minnesota, for Defendant.
___

## INTRODUCTION

In this action, The Hertz Corporation ("Hertz") seeks to vacate an arbitration award and Local Union No. 974 A/W International Brotherhood of Teamsters, AFL/CIO (the "Union") seeks to confirm it. The arbitration at issue concerned Hertz's termination of a Union employee, Mohamed Abu Mohamed. The arbitrator determined that Mohamed's termination was without "just cause" as required by the parties' collective bargaining agreement ("CBA"). Both parties now move for summary judgment. For the reasons set forth below, the Court will deny Hertz's Motion and grant the Union's Motion.

## BACKGROUND

**I.     Relevant events**

Mohamed was employed by Hertz as a Vehicle Service Attendant. (Jeffrey P. Pegula Aff. Attach. 7.) As a Hertz employee, he was subject to several written policies, including a timecard policy forbidding employees from punching any timecard other than their own ("timecard fraud"). (Id. Attach. 3, Co. Ex. 10.) The policy further provided that if an employee committed timecard fraud, he was subject to immediate termination. (Id.)

On April 4, 2008, Mohamed worked the 11:00 a.m. to 7:00 p.m. shift. (Id. Attach. 7.) Near the end of this shift, supervisor James Luxbacher overheard an employee punch two timecards. (Id.) Upon investigation, Luxbacher determined that the employee had punched his own timecard and Mohamed's. (Id.) Luxbacher notified his immediate supervisor of the incident, who suspended Mohamed. (Id.)

Mohamed was telephoned at home and informed of his suspension. (Id.; Arbitration Transcript "T" at 256.) The following Monday, Mohamed learned that his suspension was for 28 days. (Id. at 256, 260.) In response to the suspension, the Union filed a grievance on Mohamed's behalf. (Id. at 283.) Mohamed was then asked to meet with a Hertz Human Resources ("HR") manager for further investigation, but he declined to attend this meeting without a Union representative. (Id. Attach. 7.) Without further investigation, his suspension was converted to a termination. (Id. Attach. 2, Joint Ex. 3, Attach. 7.)

## II. The collective bargaining agreement

Hertz and the Union are parties to a CBA. (Id. Attach. 2, Joint Ex. 1.) Article XXIX of the CBA provides that Hertz management has "the right to make such reasonable uniform rules and regulations governing the conduct of its employees." (Id.) Article IX, Section 1 of the CBA provides that Hertz "will not discharge or suspend any employee without just cause." (Id.) The CBA further requires that Hertz "give at least one (1) warning of the complaint" against an employee "before he is discharged or suspended for a repetition of the same [conduct]." (Id.) However, no such warning is required "in [a] case of dishonesty." (Id.)

## III. Arbitration award and current lawsuit

As mentioned above, the Union filed a grievance challenging Mohamed's suspension. (T. at 283.) This grievance was later amended to challenge his termination. (Id.; Attach. 2, Joint Ex. 2.) When the grievance was not resolved, the case was submitted to arbitration. (Id. Attach. 7.) The task of the arbitrator was to determine whether Hertz had "just cause" for Mohamed's termination. (Id.)

After a hearing, the arbitrator determined that Mohamed had committed timecard fraud, but nevertheless found that his termination was without "just cause." (Id.) Specifically, the arbitrator found that the charged misconduct did not:

> fully constitute just cause for the discharge based upon the following tainted factors in the company case. A main factor is that the company made its decision for discharge after the grievant . . . wanted the union present during any investigation talk and the grievant stated he would meet the company with the union [at the] grievance meeting. The company did not accommodate this request or defer its investigation, but instead

3

> immediately decided for the discharge. This can be regarded as retaliation for the request of the grievant for the union.

(Id.) Because the arbitrator found that Hertz did not have "just cause" for the termination, he revoked the discharge and reinstated the suspension. (Id.)

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

Where, as here, the Court confronts cross-motions for summary judgment, this approach is only slightly modified. When considering the defendant's motion, the Court views the record in the light most favorable to the plaintiff, and when considering the plaintiff's motion, the Court views the record in the light most favorable to the defendant.

4

Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc., 293 F.3d 402, 404 (7th Cir. 2002). "Either way, summary judgment is proper if the record demonstrates that there is no genuine issue as to any material fact." Id.

## ANALYSIS

An arbitrator's interpretation of a collective bargaining agreement "must be afforded extreme judicial deference." Am. Nat'l Can Co. v. United Steelworkers of Am., 120 F.3d 886, 889 (8th Cir. 1997). Thus, "a court must enforce an arbitrator's award so long as the award draws its essence from the collective bargaining agreement, notwithstanding the court's possible disagreement with the arbitrator's interpretation." Id. (citation omitted). Absent fraud or dishonesty, an arbitrator's award must be enforced "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987). However, while an arbitrator's award is to be given extreme deference, "an arbitrator may not dispense his or her own brand of industrial justice." Am. Nat'l Can, 120 F.3d at 890.

Hertz urges the vacation of the arbitrator's award on four grounds: (1) the arbitrator decided issues outside the scope of the submission; (2) the arbitrator decided an issue within the exclusive jurisdiction of the National Labor Relations Board ("NLRB"); (3) the award violates public policy; and (4) the award does not "draw its essence" from the CBA. (Pl. Mem. in Supp. at 16-26.) The Court addresses each below.

**I.     Scope of the submission**

Hertz first argues that "the arbitrator decided an issue not submitted to him." (Pl. Mem. in Supp. at 18.) Specifically, Hertz asserts that during the arbitration hearing, the Union did not specifically argue that Mohamed's termination was retaliatory, and therefore, the issue of retaliation was not properly before the arbitrator. However, Hertz cites no authority holding that an arbitrator is confined by the parties' contentions. Instead, an arbitrator is limited by the parties' submission. See Kan. City Luggage & Novelty Workers Union, Local No. 66 v. Neevel Luggage Mfg. Co., 325 F.2d 992, 994 (8th Cir. 1964) (holding that the issue of back pay was not rightfully decided by the arbitrator because the issue was not "specifically or necessarily included in the subject matter submitted to arbitration"). In this case, the parties submitted to the arbitrator the issue of whether Hertz had "just cause" in terminating Mohamed. The arbitrator determined that Mohamed was terminated for retaliatory reasons not constituting "just cause." Accordingly, the issue decided by the arbitrator was that expressly submitted to him.

**II.    Exclusivity of NLRB jurisdiction**

Hertz next asserts that the arbitrator decided matters "within the exclusive jurisdiction of the NLRB." (Pl. Mem. in Supp. at 21.) The right to the presence of a Union representative during an investigatory interview, commonly referred to as a Weingarten right, is protected by the National Labor Relations Act, 29 U.S.C. § 157. NLRB v. J. Weingarten, Inc., 420 U.S. 251, 260 (1975). Therefore, Hertz asserts that a determination concerning Mohamed's Weingarten rights is within the exclusive

jurisdiction of the NLRB. See Richardson v. Kruchko & Fries, 966 F.2d 153, 158 (4th Cir. 1992) (noting that unfair labor practices are the within the exclusive jurisdiction of the NLRB).

In this case, the arbitrator did not hold that Hertz committed an unfair labor practice. Instead, he held that a retaliatory termination cannot constitute "just cause." "Under national labor policy, management and organized labor have both contractual rights derived from collective bargaining agreements and statutory rights stemming from public laws . . . both rights have legally independent origins and both are equally available to the aggrieved employee." Graphic Arts Int'l Union Local 97B v. Haddon Craftsmen, Inc., 796 F.2d 692, 696 (3d Cir. 1986) (internal quotation marks and citation omitted). Accordingly, an arbitrator does not lose jurisdiction over a claim under a collective bargaining agreement simply because the factual basis of the dispute can also be construed as an unfair labor practice.[1] See id. at 698 (noting that because the arbitrator "constrained herself to an interpretation of the terms of the contract," the award would not be vacated because the facts presented could also constitute an unfair labor practice). Here, the arbitrator limited his decision to the interpretation of the "just cause" language of the CBA, and therefore stayed within the bounds of the authority delegated to him.

---

[1] The Arbitrator did not reference Mohamed's Weingarten rights in the award. However, even if such rights had been referenced, it would not indicate that the arbitrator was vindicating a perceived unfair labor practice. In fact, "an arbitrator may look to outside sources to aid in interpreting a collective bargaining agreement." Int'l Paper Co. v. United Paperworkers Int'l Union, 215 F.3d 815, 817 (8th Cir. 2000).

7

**III. Public policy**

Hertz next asserts that the arbitration award is contrary to public policy. Specifically, Hertz asserts that the award violates public policy because "it effectively eliminates Hertz's right, as recognized by the Supreme Court, to dispense with the investigatory interview and make [a] decision based on the available evidence." (Pl. Mem. in Supp. at 22.)

Hertz is correct that when an employee refuses to attend an investigatory interview without union representation, an employer may dispense with the interview and make a disciplinary decision based upon the available information. Weingarten, 420 U.S. at 258-59. However, while an employer may terminate an employee without conducting an investigatory interview, the employer may not terminate an employee because he refuses to attend an interview without a union representative. Id. at 255. Accordingly, Hertz's public-policy argument simply demonstrates its disagreement with the arbitrator's factual finding that Hertz converted Mohamed's suspension to a termination because of his refusal to attend the HR meeting.[2] The arbitration award, finding that Mohamed was terminated for retaliatory reasons not constituting "just cause," does not violate public policy because it does not contravene an employer's right to dispense with the

---

[2] "[F]ederal courts are not authorized to reconsider the merits of an arbitral award, even though the parties may allege that the award rests on errors of fact." Boise Cascade Corp. v. Paper Allied-Indus., Chem. & Energy Workers, Local 7-0159, 309 F.3d 1075, 1080 (8th Cir. 2002) (internal quotation marks and citation omitted).

8

investigatory interview and make a good faith disciplinary determination based upon available information.³

## IV. Drawing its essence from the CBA

Finally, Hertz asserts that the award does not "draw its essence" from the CBA. (Pl. Mem. in Supp. at 24.) An award draws it essence from a CBA when "it is derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." Boise Cascade Corp. v. Paper Allied-Indus., Chem. & Energy Workers, Local 7-0159, 309 F.3d 1075, 1080 (8th Cir. 2002) (internal quotation marks and citation omitted). In this case, Hertz asserts that the award does not "draw its essence" from the CBA because the CBA permits the termination of an employee, without prior notice, when the employee commits timecard fraud. Therefore, because the arbitrator found that Mohamed had committed timecard fraud, Hertz asserts that he was required to affirm the termination pursuant to the unambiguous language of the CBA. (Pl. Mem. in Supp. at 25 (quoting Excel Corp. v. United Food & Commercial Workers Int'l Union, Local 431, 102 F.3d 1464, 1468 (8th Cir. 1996) ("[T]he arbitrator is not free to ignore or abandon the plain language of the CBA.").) However, the arbitrator did not ignore or abandon the CBA's language. The CBA does not <u>require</u> that employees be terminated for timecard fraud, but simply <u>allows</u> that they be terminated, without prior

---

³ Hertz also asserts that the arbitration award imposed a new obligation on Hertz not required by the CBA. Specifically, Hertz argues that the arbitrator found that it <u>must</u> have a meeting with a Union representative before terminating an employee. (Pl. Mem. in Supp. at 23-24.) However, this misconstrues the arbitrator's award. The arbitrator simply held that Mohamed was terminated <u>because</u> he refused to attend the HR meeting without a union representative, and therefore, the termination was without "just cause."

9

notice, for acts of "dishonesty." (Id. Attach. 2, Joint Ex. 1.) Here, the arbitrator found that Mohamed was not fired for timecard fraud, but was fired for refusing to attend a meeting without a Union representative. The arbitrator further determined that the refusal to attend the meeting was not "just cause." While Hertz argues that such a determination is unreasonable, it draws its essence from the CBA because the award is expressly interpreting and applying CBA language.

It is not for the Court to decide "whether [it] would have awarded [the] particular relief, or whether the arbitrator correctly interpreted the contract. Those questions are, in all but the clearest cases, the arbitrator's business, not [the Court's]." United Elec., Radio & Mach. Workers of Am., Local 1139 v. Litton Microwave Cooking Prods., 728 F.2d 970, 972 (8th Cir. 1984). In this case, because the award "arguably" construes the CBA, it must be confirmed. Misco, 484 U.S. at 38.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Hertz's Motion for Summary Judgment (Doc. No. 13) is **DENIED**, and the Union's Motion for Summary Judgment (Doc. No. 12) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: November 2, 2009

                                            s/Richard H. Kyle
                                            RICHARD H. KYLE
                                            United States District Judge